IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JH PARKER CONSTRUCTION COMPANY, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-471C |
| THE UNITED STATES, | ) | (Chief Judge Damich) |
| Defendant. | ) | |

JOINT STATUS REPORT AND MOTION
FOR LEAVE TO FILE DRAFT TRIAL PREPARATION ORDER AT A LATER TIME

Pursuant to the Court's order, dated February 22, 2006 ("February Order"), the parties respectfully submit the following status report concerning the progress of discovery.

In addition, the parties seek leave to file a draft trial preparation order at a later time when the parties will have a better understanding of the scope of trial and the time needed to meet various deadlines. Just prior to the February Order, the parties suggested that trial might occur in July 2006. Since that time, the parties have agreed that trial should occur no sooner than the fall of 2006. Accordingly, we respectfully suggest that the draft trial preparation order is no longer immediately required.

I. Document Production

Attached as Exhibit A is a log of documents produced by the United States to the plaintiff, JH Parker Construction Company, Inc. ("Parker"). Most of the documents -- more than 20,000 pages -- were gathered from Government files, and were produced many

months ago. However, a few thousand pages have recently been obtained by subpoena from various subcontractors to Parker and from consultants; these documents have only recently been produced to Parker.

The United States anticipates that it may obtain some documents from the Mississippi Department of Environmental Quality ("MDEQ"). In keeping with its usual practice in this case, the United States will have more than one copy of these documents made, and will produce a copy to Parker at essentially the same time that the documents become available for use by the United States. The United States does not expect to gather more than one box of documents from MDEQ, but the exact volume is unknown at this time.

It is possible that the United States may obtain some documents from various sureties. In addition, the United States constantly double-checks the existence of Government records whenever counsel speaks to Government witnesses, and there is a small possibility that additional documents will be discovered in that manner. However, at this point, there is no reason to expect a large volume of documents from either source.

Parker produced substantive documents related to the termination issue in electronic format on June 5, 2005. Subsequently, hurricane devastation and rebuilding efforts hampered Parker's discovery activities. By letter dated February

6, 2006, the United States identified particular documents that it believed had not been produced. On March 13, 2006, Parker delivered an additional 25 boxes of documents to the Government. More than half of these documents relate to Parker's involvement in a lawsuit with a third party subcontractor in Louisiana. The remainder of the March 13, 2006 document production addresses the Government's request for financial data and vendor files. By letters dated June 30, 2005; November 27, 2005; December 2, 2005; and January 18, 2006, Parker has made similar requests for specific documents that it believes have not been produced by the United States.

II. Interrogatories

The United States served a small set of interrogatories in June 2004. Some confusion occurred when Parker changed its counsel. Based upon an agreement with the Government, Parker responded to the Government's interrogatories in January 2006.

Parker served a larger set of interrogatories in January 2006. Parker has graciously agreed to extend the deadline for the Government response to mid-April.

III. Depositions

Both parties have indicated that they intend to depose likely witnesses at trial. Initially, the lists of likely witnesses have been quite long: perhaps as many as 10 witnesses on each side. However, recently the parties have conferred to

try to clarify the likely scope of the factual issues at trial. As a result, it may be possible to substantially reduce the number of witnesses at trial -- and so reduce the number of depositions.

At the time of termination, Parker had done little or no work for months. Parker contends that it was prevented from working because there was a need to resolve certain design issues on the dam and because rainy weather prevented work on many days. Accordingly, in its interrogatories, Parker disclosed a number of trial witnesses who expected to testify about design issues and weather issues.

Since receiving Parker's interrogatories, the United States has sought to clarify the likely scope of its presentation at trial. First, the United States will demonstrate that Parker failed to maintain erosion control at the site for many months, this failure compromised the project, and neither dam design issues nor weather concerns excused this prolonged refusal to work. Second, the United States will demonstrate that Parker was not performing because Parker had gone broke many months before the termination. Either reason was sufficient to support the contracting officer's conclusion that Parker had abandoned the project.

Parker vehemently disputes the propriety of the termination for default. At trial, Parker will demonstrate that design

defects for which the Government bears responsibility along with excusable weather delays prevented work at the project for many months. Similarly, Parker will show that it was certainly viable, capable and willing to complete the work had the Government acted in accordance with its contractual obligations. The United States has only recently raised the issue of alleged failure to comply with erosion control procedures by letter dated February 23, 2006. Parker is evaluating this allegation to determine its impact upon trial presentation and potential settlement discussions.

The United States may reduce its requests for depositions if Parker decides to reduce its list of likely trial witnesses (reported in Parker's response to the Government's first set of interrogatories). At this time, Parker has not yet made any revisions to its response.

IV. Requests For Admissions

It is the practice of counsel for both parties to follow up a deposition with a set of requests for admissions that seek to bind the other party to significant admissions made by the deponent. It is possible that there will be an opportunity for

such discovery in this case. Such discovery is often useful to narrow the scope of the factual issues to be tried.

Respectfully submitted,

S/ Carter Reid
CARTER REID
Watt, Tieder, Hoffar
& Fitzgerald
8405 Greensboro Drive
Suite 100
McLean, VA 22102
Tele: (703) 749-1028
Fax: (703) 893-8029

Attorney for Plaintiff

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

S/ James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tele: 202-307-6289
Fax: 202-514-7969

Attorneys for Defendant

March 20, 2006

CERTIFICATE OF FILING

I hereby certify that on March 20, 2006, a copy of the foregoing "JOINT STATUS REPORT AND MOTION FOR LEAVE TO FILE DRAFT TRIAL PREPARATION ORDER AT A LATER TIME" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier